**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Rivera,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Forsythe Family Farms Incorporated,<br><br>　　　　　Defendant. | No. CV-21-00416-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant Forsythe Family Farms Incorporated's ("Forsythe") motion for partial summary judgment. (Doc. 29.) The motion is fully briefed (Docs. 33, 34), and the Court heard oral argument on June 24, 2022. For reasons stated below, the motion is denied.

**I. Background**

From 1996 to 2019, Forsythe owned three adjoining parcels of real property located in Maricopa County, Arizona, that totaled approximately 43 acres (the "Property"). (Doc. 30 at 2.) Plaintiff Gregory Rivera, doing business as Rivera Hay Sales, began occupying the Property in February 2014 pursuant to an oral agreement between the parties. (Doc. 33-1 at 3.) On July 16, 2014, Forsythe and Rivera entered into a four-year written lease agreement backdated to August 15, 2013 ("2013 Lease"). (Docs. 30-1 at 2, 33-1 at 3, 33-3 at 28.)

The 2013 Lease allowed Rivera to use the Property for farming and agricultural

activities until August 14, 2017. (Doc. 30 at 2.) In exchange, Rivera agreed to make annual rental payments of $1.00 for the first and second years of the lease, and $2,150.00 per year for the third and fourth years of the lease. (Doc. 30-1 at 2.) The 2013 Lease specified that any rental payment not paid within ten days of its due date shall be subject to a 7% late charge. (*Id.*)

The taxes on the Property decreased substantially when Maricopa County reclassified the Property as agricultural in April 2016. (Doc. 33-3 at 6-12, 30-31.) The Property remained classified as agricultural from 2016 through 2020. (*Id.* at 6-12.)

On August 14, 2017, the 2013 Lease expired by its own terms. (Doc. 33-1 at 4.) Rivera did not make any payments under the 2013 Lease. (Doc. 30 at 4.) Rivera attempted to contact Forsythe about renewing the lease, but he did not receive a response and let his crops die in late 2017. (Doc. 33-1 at 4.)

On January 19, 2018, a Forsythe representative called Rivera, advising him that Forsythe wanted him to return to farming on the Property immediately and that she would prepare a new lease. (*Id.*) On March 9, 2018, they discussed the terms of the new lease and agreed that it would follow the same format as the 2013 Lease with no break in the lease period. (*Id.* at 5.) On March 9, 2018, a Forsythe representative emailed Steven Page, Vice President & CFO of Indeck Power Equipment Company, requesting that a new lease be drawn up based on the 2013 Lease format without a break in the lease period. (Doc. 33-5 at 9.)

The draft lease ("Purported 2018 Lease") required Rivera to pay $2,150 per year for four years with any rent payment not paid within ten days of its due date subject to a 7% late charge. (Doc. 33-5 at 12.) In addition, the Purported 2018 Lease required Rivera to pay $2,150 for full and final payment of all past due rents, due upon the signing of the lease agreement.[1] (*Id.*) Page prepared the Purported 2018 Lease by making redlined changes to the 2013 Lease. (*Id.* at 6, 12.) He sent an email on March 15, 2018 stating that the

---

[1] Forsythe alleges that it informed Rivera that Forsythe would not consider entering into another lease with him until he paid the outstanding amounts owed under the 2013 Lease. (Doc. 30 at 4-5.) The language of the Purported 2018 Lease suggests otherwise.

1  Purported 2018 Lease included changes Forsythe requested, including that $2,150 be paid
2  upon signing to clear the slate on all prior rents. (*Id.* at 6.)

3        Rivera reentered the Property to begin farming operations in early March 2018.
4  (Doc. 33-1 at 6.) Rivera cleared the Property, installed improvements for irrigation, and
5  planted a new crop, allegedly investing over $70,000 in performing these tasks. (*Id.*, Doc.
6  29-2 at 2-8.) He did not hear from Forsythe between March 2018 and January 2019, but
7  he called Forsythe's office on three occasions in September 2018 to inquire about the status
8  of the Purported 2018 Lease. (Docs. 33-1 at 6-7, 33-4 at 2.)

9        On January 25, 2019, Forsythe leased the Property to another farmer, Double H
10 Krop Farms ("Double H") at an annual rate of $5,500. (Docs. 30 at 5, 30-4.) On January
11 31, 2019, Forsythe emailed Rivera, demanding that he vacate the Property. (Doc. 33-5 at
12 36.)

13       Rivera complied but filed suit against Forsythe in Maricopa County Superior Court
14 on January 29, 2021. (Doc. 1-1 at 3-13.) Rivera's complaint brought claims for breach of
15 an oral agreement (namely, the 2018 Purported Lease—at the time, Rivera did not know
16 that a written version existed), promissory estoppel, negligent misrepresentation, breach of
17 the implied covenant of good faith and fair dealing, quantum meruit, and unjust
18 enrichment. (*Id.*) On March 10, 2021, Forsythe removed the action to this Court. (Doc.
19 1.) On May 5, 2021, this Court granted Forsythe's motion to dismiss Rivera's claims for
20 breach of contract, negligent misrepresentation, and breach of the implied covenant of good
21 faith and fair dealing under Federal Rule of Civil Procedure 12(b)(6). (Doc. 13.) Forsythe
22 then filed counterclaims against Rivera for breach of the 2013 Lease and unjust enrichment.
23 (Doc. 16 at 11-12.) Forsythe now moves for partial summary judgment on its breach of
24 contract counterclaim and on Rivera's promissory estoppel, unjust enrichment, and
25 quantum meruit claims. (Doc. 29.)

26 **II. Legal Standard**

27       Summary judgment is appropriate when there is no genuine dispute as to any
28 material fact and, viewing those facts in a light most favorable to the nonmoving party, the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

**III. Discussion**

**A. Breach of Contract (2013 Lease)**

To prevail on a breach of contract claim, the plaintiff must prove the existence of a contract, its breach, and resulting damages. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Forsythe argues summary judgment is warranted on its breach of contract counterclaim because the 2013 Lease is an enforceable contract, which Rivera breached by failing to pay Forsythe the annual rental payments. (Doc. 29 at 6.)

Rivera does not dispute that he failed to make the payments required by the 2013 Lease. (Doc. 33-1 at 3-4.) He argues, however, that the 2013 Lease is not the operative contract because the parties modified it when they agreed he would pay $2,150 upon execution of the Purported 2018 Lease to "clear the slate" on all prior rents. (*See* Docs. 33

at 8, 33-1 at 5.)

To effectively modify a contract, there must be: (1) an offer to modify the contract, (2) assent to or acceptance of that offer, and (3) consideration. *Demasse v. ITT Corp.*, 984 P.2d 1138, 1144 (Ariz. 1999). Whether the parties mutually assented to a modification typically is a question of fact. *See Muchesko v. Muchesko*, 955 P.2d 21, 24-25 (Ariz. App. 1997). Further, an agreement that falls within the statute of frauds can only be modified via a writing that also satisfies the statue of frauds. *See Snyder v. HSBC Bank, USA, N.A.*, 873 F.Supp.2d 1139, 1149 (D. Ariz. 2012).

Rivera points to the Purported 2018 Lease and two related emails bearing the signatures of Forsythe representatives Marsha Forsythe and Steven Page as evidence that the 2013 Lease was modified in a manner compliant with the statute of frauds. (Doc. 33-5 at 6-10, 12-16.) Forsythe argues this evidence is insufficient to establish mutual assent or consideration. (Doc. 34 at 6.) But summary judgment is inappropriate where the existence of a contract is disputed and the evidence is conflicting. *See Johnson Int'l, Inc. v. City of Phoenix*, 967 P.2d 607, 611 (Ariz. Ct. App. 1998). Because the Purported 2018 Lease and internal Forsythe emails are enough to create a genuine issue of material fact as to whether the 2013 Lease was modified, summary judgment is denied.[2]

---

[2] The Court notes two potential problems that flow from Rivera's modification theory.

First, if the Purported 2018 Lease proves to be a legally binding modification, then Rivera's equitable claims necessarily fail. *See In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2018 WL 11352137, at *3 (D. Ariz. Aug. 7, 2018). A party cannot succeed on equitable theories of liability when contractual remedies are available. Rivera acknowledged as much during oral argument. But Rivera never moved for reconsideration of the Court's prior order dismissing his breach of contract claim predicated on the Purported 2018 Lease. What this means is that Rivera has a choice: (1) succeed in his defense against Forsythe's breach of contract claim by proving that the Purported 2018 Lease legally modified the 2013 Lease, thereby defeating his own equitable claims, or (2) lose the breach of contract claim and keep alive his equitable claims. But at this stage, nothing prevents Rivera from proceedings to trial on alternative, though mutually exclusive, theories.

Second, assuming the Purported 2018 Lease is a legally binding modification, it is undisputed that Rivera has not paid Forsythe any amounts under that lease either. Rivera asserted during oral argument that his payment obligations under the Purported 2018 Lease only began upon signing and, because he has not signed the Purported 2018 Lease, he presently has no duty to pay. But it strikes the Court as incongruous to argue that the Purposed 2018 Lease is binding on Forsythe but not on Rivera—that Rivera gets all the benefits but shoulders none of the obligations. There might be other arguments for why Rivera cannot be liable for breach of the Purported 2018 Lease, but none of these issues

**B. Promissory Estoppel**

To prevail on a promissory estoppel claim, a party must establish (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) that the reliance was both reasonable and foreseeable; and (4) injustice can be avoided only by enforcement of the promise. *See In re Bashas' Inc.*, 468 B.R. 381, 383 (D. Ariz. 2012); Restatement (Second) of Contracts § 90(1). Rivera alleges that he reasonably, foreseeably, and detrimentally relied on Forsythe's promise to prepare a new written lease by returning to the Property in March 2018 and expending resources improving the land and resuming farming operations. (Docs. 33 at 9-10, 29-2 at 2-8.)

Forsythe argues that Rivera's promissory estoppel claim is barred by the doctrine of unclean hands because Rivera failed to make any payments under the 2013 Lease or under the Purported 2018 Lease. (Doc. 29 at 8-11.) But in Arizona the doctrine of unclean hands only bars a plaintiff's claim if the plaintiff's bad behavior "relate[s] to the very activity that is the basis of his claim." *See Barr v. Petzhold*, 273 P.2d 161, 166 (Ariz. 1954). Here, the activity at issue is Forsythe's alleged promise to prepare a new lease in exchange for Rivera returning immediately to farm the Property. Although Rivera failed to make payments under the 2013 Lease and the Purported 2018 Lease, these failures do not relate to the very activity at issue. The doctrine of unclean hands therefore does not bar Rivera's claim.

Citing *Trollope v. Koerner*, 470 P.2d 91 (Ariz. 1970), Forsythe also argues that Rivera's reliance on the alleged promise to prepare a new lease was unreasonable because it is unjustifiable to rely on an oral promise when the statute of frauds, A.R.S. §44-101(6), requires that a lease for longer than a year be in writing. (Doc. 29 at 9-11.) *Trollope* is distinguishable because it involved a promissory estoppel claim brought by a landlord rather than a tenant. The court reasoned that because a landlord is in a stronger legal position than a tenant, estoppel will not be readily applied against a potential tenant. *Trollope*, 470 P.2d at 99. But if a landlord "stands by while another, assuming himself to

---

are briefed, so the Court declines to address them here. Forsythe moved for summary judgment on the theory that the 2013 Lease is an enforceable contract. Questions surrounding whether that 2013 Lease was legally modified are sufficient to defeat the precise motion Forsythe brought.

- 6 -

be a lessee under an oral agreement, makes substantial improvements, [h]e may well be held estopped to deny the lease." *Id.* What's more, the doctrine of promissory estoppel applies to a contract otherwise barred by the statute of frauds where a party promises to put the agreement in writing. *See Mullins v. S. Pac. Transp. Co.*, 851 P.2d 839, 841 (Ariz. Ct. App. 1992). Rivera contends that Forsythe promised to put the Purported 2018 Lease in writing, placing this case into the exception to the general rule. The Court denies summary judgment on Rivera's promissory estoppel claim.[3]

### C. Unjust Enrichment

An unjust enrichment claim requires proof of five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. *Wang Elec., Inc. v. Smoke Tree Resort, Ltd. Liab. Co.*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012). Rivera alleges Forsythe was unjustly enriched when Forsythe induced Rivera to prepare and farm the Property in March 2018 so that the Property would remain classified as agricultural, saving Forsythe $80,000 per year in taxes. (*See* Doc. 33 at 12-13.) Forsythe argues that Rivera's claim fails as a matter of law because Rivera cannot show a connection between his alleged impoverishment and Forsythe's alleged enrichment, in particular because there is no evidence that the Property's tax classification would have changed had Rivera not continued farming in March 2018. (Doc. 29 at 16.) The Court disagrees.

At oral argument, Rivera cited to A.R.S. §§ 42-12156 and 42-12157 to show that the agricultural classification of the Property would have changed if Rivera had not returned to the Property to continue his farming activities. Pursuant to § 42-12156, Forsythe was obligated to notify the county assessor within sixty days after the Property

---

[3] Forsythe argues that if Rivera's promissory estoppel claim is not dismissed in its entirety, partial summary judgment is appropriate to limit relief only to damages that Rivera can prove he suffered after the termination of the 2013 Lease. (Doc. 29 at 2.) The Court agrees Rivera's damages are limited to those he suffered after the 2013 Lease, but a grant of partial summary judgement is unnecessary because Rivera does not appear to be asking for damages before the termination of the 2013 Lease. The Court need not grant judgment on matters not even at issue. If the Court is wrong about Rivera's intentions and this issue arises prior to trial, Forsythe can re-raise this argument in a motion in limine.

ceased to qualify as agricultural property.  If Forsythe failed to provide the requisite notice, the Property would have been "reclassified immediately as being used for nonagricultural use," and Forsythe would have owed a penalty.  § 42-12157.  Against the backdrop of these statutes, Rivera argues that an email from Forsythe requesting that a representative draw up the Purported 2018 Lease with no break in the lease period (Doc. 33-5 at 9) demonstrates Forsythe was concerned about losing the agricultural tax status of the Property.  Rivera has raised a question of fact on this issue sufficient to preclude summary judgment.

### D.  Quantum Meruit

Quantum meruit is not a claim; it is a measure of damages to which a party might be entitled if he prevails on an unjust enrichment claim.  *See Landi v. Arkules*, 835 P.2d 458, 467 (Ariz. Ct. App. 1992).  Quantum meruit damages are available when services are performed under an unenforceable contract or when they are rendered in the absence of a contract.  *Blue Ridge Sewer Improvement Dist. v. Lowry and Assocs., Inc.*, 718 P.2d 1026, 1028 (Ariz. Ct. App. 1986).  Because the Court denies summary judgment on Rivera's unjust enrichment claim, it declines to prejudge the measure of damages that might be available.  Summary judgment as to the availability of quantum meruit relief is denied.

**IT IS ORDERED** that Forsythe's motion for summary judgment (Doc. 29) is **DENIED**.  The parties shall appear telephonically for a trial scheduling conference on **August 4, 2022, at 10:15 a.m**.  Call-in information will be provided via separate email.

Dated this 20th day of July, 2022.

Douglas L. Rayes
United States District Judge